```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

GERARD DAVID McCREE, JR.,      :
#203840                        :
     Plaintiff,                :
                               :
vs.                            :      CIVIL ACTION 12-573-CG-M
                               :
DONNY MYERS,                   :
     Defendant.                :
                               :
```

REPORT AND RECOMMENDATION

This § 1983 action, filed by an Alabama prison inmate proceeding *pro se*, was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate action.  This action is now before the Court on Plaintiff's Complaint (Doc. 1), Defendant Donny Myers' Motion to Dismiss as supplemented (Docs. 13, 16), and Plaintiff's Motion for Rebuttal Against Defendant's Motion to Dismiss (Doc. 15).  For the reasons set forth below, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails

> to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

This section of the Prisoner Litigation Reform Act is known as the "three-strike rule." Under this rule, once a prisoner has three actions dismissed for one of the reasons stated above, "he is not entitled to proceed *in forma pauperis* . . . unless he can demonstrate that he meets the 'imminent danger' requirement of § 1915(g)." *Pointer v. Marc*, 2011 WL 847012, at *1 (S.D. Ohio Mar. 8, 2011). "[T]he PLRA revokes [*in forma pauperis*] privileges and requires the prisoner to pay the same filing fees that ordinary citizens must file upon commencement of a suit." *Hubbard v. Haley*, 262 F.3d 1194, 1996 (11th Cir. 2001). "The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless to pay the full filing fee when his next action is filed." *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002).

After reviewing the records of the United States District Courts for the Southern, Middle, and Northern Districts of Alabama, the Court discovered that Plaintiff has had at least three actions or appeals that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted, namely, *Gerard*

2

*David McCree, Jr. v. Eric Jones*, 2:07-cv-280-KOB-JEO (N.D. Ala. May 9, 2007)(dismissed for failure to state a claim upon which relief can be granted); *Gerard David McCree, Jr. v. Sheriff D.T. Marshall, et al.*, 03-774-ID-SRW (M.D. Ala.)(11th Cir. Apr. 3, 2006)(appeal dismissed as frivolous); *Gerard David McCree, Jr. v. Naphcare Health Servs. et al.*, 03-22-CG-C (S.D. Ala. Sept. 15, 2003)(dismissed as frivolous). Thus, the present action falls within the scope of 28 U.S.C. § 1915(g).[1] Plaintiff did not pay the full $350.00 filing fee at the time of filing this action; instead, he filed his Complaint *in forma pauperis* in violation of the PLRA.

In order to avoid the dismissal of the present action under § 1915(g), Plaintiff must satisfy its exception, which requires that the Plaintiff show that he was "under imminent danger of serious physical injury" at the time of the complaint's filing. *See Abdul-Akbar v. McKelvie*, 239

---

[1] Plaintiff indicates in his complaint that he has filed other lawsuits in state or federal court; yet, although he is required to list all such actions, he lists only one (Doc. 1 at 2). Plaintiff then signs his Complaint under penalty of perjury (*Id.* at 23). The failure to list prior cases is considered sanctionable conduct warranting the dismissal of an action for an abuse of process and the counting of the dismissal as a strike. *Hill v. Bishop*, 2012 WL 1698382, at *2-3 (S.D. Ala. Apr. 12, 2012) (reviewing prisoner cases that were dismissed as a sanction for the plaintiff's failure to list his prior cases because of the plaintiff's failure was an abuse of process).

F.3d 307, 315 (3d Cir. 2001)(stating that, "[b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three-strikes' rule to prevent impending harms, not those harms that had already occurred."); *Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004)(concluding that a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999)(the imminent danger of serious physical injury faced must be at the time the complaint is filed, not at a prior time).

    In a prisoner action, the complaint is filed when a "prisoner deliver[s] it to the prisoner authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266 (1988). The filing of this action appears to have occurred between September 3, 2012, when Plaintiff signed and dated the Complaint (Doc. 1 at 23), and September 6, 2012, when the Court docketed it (Doc. 1). For the purposes of this Report and Recommendation, the Court will use September 3, 2012, as the date of the filing.

    After reviewing the Complaint to determine if Plaintiff's allegations satisfied § 1915(g)'s exception, the Court ordered the sole Defendant, Donny Myers, to show cause why this action should be barred by § 1915(g) (Doc.

4

11).  In response, Defendant filed a Motion to Dismiss asserting that Plaintiff was not in imminent danger at the time of the Complaint's filing, and provided an affidavit of a treating physician and Plaintiff's medical records.

    The Complaint contains the following allegations. Prior to Plaintiff's incarceration, he was "wounded by a gunshot that hit under the bottom of [his] right foot and came out [of] the top of the foot causing a serious injury" (Doc. 1 at 4).  Subsequent to this injury, Plaintiff was convicted of capital murder (*Id.*).  Eventually, he was housed at W.E. Donaldson Correctional Facility ("Donaldson") where, in 2007, his injured foot began to swell, which made it painful to walk (*Id.*).  The physician at Donaldson treated the condition and caused the swelling to go down and determined that Plaintiff's condition required "special shoes" (*Id.*).

    In September, 2010, Plaintiff was transferred to Holman Correctional Facility ("Holman") from St. Clair Correctional Facility (Doc. 1 at 4).  In June, 2011, Plaintiff's request for special shoes was denied, so he paid for and ordered a pair of shoes which did not support his injured foot when he walked (*Id.* at 4,5).  On July 17, 2011, Plaintiff's foot began to swell with pain up his right leg causing him to request "special shoes" (*Id.* at

5).  On April 23, 2012, he began filing medical grievances, but he was denied "special shoes" by Defendant Donny Myers (*Id.*).

At this point in Plaintiff's Complaint (Doc. 1 at 6-20), his allegations are clouded with verbiage that contain legal cases and conclusions of law, which he was instructed not to include (*Id.* at 3, Sec. II, G).  Scattered throughout the verbiage are a few factual allegations indicating that Plaintiff was left with worn-out shoes (*id.* at 11), and that his condition worsened due to the failure to receive "special shoes" and medical treatment for his foot (*Id.* at 7).  Plaintiff's last visit with Dr. Barber was in March, 2012, when she prescribed a pain pill for him and said to give her some time to see if the shoes could be provided (*Id.* at 12).  Plaintiff maintains that he has pain (*id.* at 9, 11, 12), which is chronic (*id.* at 20) and interferes with his ability to communicate (*id.* at 16), and that his foot is swollen (*id.* at 9, 12, 16, 17), and has turned black (*Id.* at 5, 9, 17).

The grievances attached to the Complaint are dated April 23, 2012, August 19, 2012 (two), and August 21, 2012 (Doc. 1 at 24-27).  The information contained in them shows that Defendant denied Plaintiff's August 19, 2012 grievances for the black shoes for diabetics because

6

Plaintiff was not a diabetic (*Id.* at 25).  The other August 19, 2012 grievance was responded to on August 20, 2012, informing Plaintiff that a different route was being used to obtain shoes for him, as he does not need diabetic shoes, and for him to write Dr. Barber (*Id.* at 27).  On August 21, 2012, he wrote Dr. Barber; a nurse responded that a request to send him to an appropriate provider was being submitted for approval (*Id.* at 26).

    The information provided by Defendant shows, through Dr. Barber's sworn affidavit executed on December 3, 2012, that Plaintiff was being seen and treated by Dr. Barber (Doc. 16 at 4).  Dr. Barber relates that due to an old gunshot injury, Plaintiff is missing a small portion of his right heel and that he is able to fully function with normal shoes and his daily living activities are not affected (*Id.*).  On account of Plaintiff's complaint of pain in his right foot with mobilization when he wore ADOC-issued footwear, he was given a prosthetics and orthotics referral to see if special footwear could alleviate the pain (*Id.*).  Plaintiff's situation is being considered by those who saw him (*Id.*).  Dr. Barber concludes that Plaintiff was not under imminent danger of serious physical injury when he filed the Complaint in September, 2012, or at the time when she executed her affidavit (*Id.*).

The medical records attached by Defendant reflect that Plaintiff was seen on March 13, 2012, for foot problems with swelling and discoloration being noted (Doc. 16 at 31). The records from that date reflect that Plaintiff had a normal gait (*id.* at 24) and a foot pain rating of "3" on a scale of "0-10" (*Id.* at 25). A normal gait was again noted on October 25, 2012 (*Id.* at 21). On November 13, 2012, a referral for prosthetics and orthotics was made with the symptoms described as pain and pedal edema, and the objective finding being stasis dermatitis and edema[2] (*Id.* at 48). It is noted that Plaintiff has been seen for a variety of other ailments, for instance, his complaint of March 13, 2012, for coughing up blood after smoking (*id.* at 24), for which he received an X-ray showing C.O.P.D. (*Id.* at 11). And on September 6, 2012, three days after this Complaint was filed, he was found to be "generally healthy" (*Id.* at 8).

---

[2] *See* The Merck Manual's Online Medical Library: The Merck Manual for Healthcare Professionals, available at http://www.merckmanuals.com/professional/dermatologic_disorders/dermatitis/stasis_dermatitis.html#v961745 (stating that, "[s]tasis dermatitis is inflammation of the skin of the lower legs caused by chronic venous insufficiency."); *see also* http://www.merckmanuals.com/professional/cardiovascular_disorders/symptoms_of_cardiovascular_disorders/edema.html?qt=edema&alt=sh (stating that, "[e]dema is swelling of the soft tissues due to increased interstitial fluid.").

The Court finds that Plaintiff does not satisfy the exception to § 1915(g).  At the time he filed the Complaint on September 3, 2012, Plaintiff alleges no facts indicating that he was "under imminent danger of serious physical injury."  Rather, his allegations show that he has a long-standing condition that was being treated and monitored by a health care professional.  There are no allegations showing an exacerbation of his condition, nor does he allege what the consequences would be if he does not receive the requested medical treatment.  Furthermore, it has been held that an institution's failure to provide an inmate with "special shoes" does not place the inmate in "imminent danger of serious physical injury."  *Wilcher v. Crosby*, 2005 WL 2406037, at *1 (N.D. Fla. Sept. 9, 2005)(unpublished)[3] (finding that the institution's failure to provide Plaintiff with special orthopedic shoes did not create an imminent danger of serious physical injury so as to fall within the exception); *see Pointer v. Marc*, 2011 WL 847012, at *2 (S.D. Ohio Mar. 8, 2011)(unpublished)(holding that the suffering of chronic foot pain and swelling does not satisfy the "imminent danger of physical injury"

---

[3] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

9

exception); *cf. Zuniga v. Univ. Health Sys.*, 71 Fed. Appx. 293 (5th Cir. 2003)(affirming the district court's denial of preliminary injunction where inmate submitted no medical opinion showing that he would suffer irreparable harm if he were not given orthopedic shoes); *Dolph v. Ariz. Cmty. Prot. & Treatment Ctr.*, 2010 WL 3998092, at *2 (D. Ariz. Oct. 12, 2010)(unpublished)(finding that, based on his allegations of frequent soreness, pain, discoloration and swelling in his feet, there was no Eighth Amendment violation when Plaintiff was required to buy his own medical shoes); *Gill v. Frawley*, 2006 WL 1742738, at *6-7 (N.D.N.Y. June 22, 2006)(concluding that Plaintiff's birth-defect deformity in both feet for which orthopedic footwear was prescribed did not constitute the serious medical need required for an Eighth Amendment violation because it was not a condition of urgency, [or] one that may produce death, degeneration, or extreme pain)(citation and quotation marks omitted).

   As set out above, Plaintiff has not shown that at the time he filed his Complaint on September 3, 2012, he was under imminent danger of serious physical injury.  The Court concludes that Plaintiff did not satisfy § 1915(g)'s exception, nor did he pay the full filing fee, when he filed this action.  Therefore, this action is barred by §

1915(g) and it is recommended that it be dismissed without prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 15th day of January, 2013.

                                             s/BERT W. MILLING, JR.
                                             UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1. *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge=s recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  *Fed. R. Civ. P.* 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.